**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 15-cv-1251-NYW

CONTINENTAL CREDIT CORPORATION,
NATIONAL CREDIT CARE CORPORATION,

      Plaintiffs,

v.

PAUL C. GARCIA,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

Magistrate Judge Nina Y. Wang

This matter is before the court on the Motion to Dismiss Counterclaims filed by Plaintiffs Continental Credit Corporation and National Credit Care Corporation [#10, filed July 23, 2015], Defendant's Motion to Dismiss (Rule 12(b)(6)) or for Judgment on the Pleadings (Rule 12(c)) [#35, filed Oct. 19, 2015], and the Motion to Strike Portions of the Kyle Kolb Affidavit [#39, filed Dec. 3, 2015]. These motions are before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c), the Parties' Consent to the Exercise of Jurisdiction by a United States Magistrate Judge dated October 9, 2015 [#32], and the Order of Reference dated October 14, 2015 [#34].

The court has reviewed the motions and the associated briefing. Having considered the Parties' briefing and the applicable case law, and being fully advised of the premises, the court **ORDERS** that: (1) Plaintiffs' Motion to Dismiss Counterclaims [#10] is **DENIED** as **MOOT**; (2) Defendant's Motion to Dismiss (Rule 12(b)(6)) or for Judgment on the Pleadings (Rule

12(c)) [#35] is **GRANTED IN PART** and **DENIED IN PART**; and (3) Defendant's Motion to Strike Portions of the Kyle Kolb Affidavit [#39] is **DENIED** as **MOOT**.

## BACKGROUND

Plaintiffs Continental Credit Corporation and National Credit Care Corporation ("Continental Credit" and "National Credit Care"; collectively, "Plaintiffs") initiated this action on June 12, 2015 by filing a Complaint against Defendant Paul C. Garcia ("Defendant" or "Mr. Garcia"). [#1]. The two claims for relief in the Amended Complaint, for breach of contract and unjust enrichment, stem from Mr. Garcia's alleged breach of a covenant not to compete that he purportedly signed as an employee of Continental Credit. Mr. Garcia answered and asserted a counterclaim for abuse of process on July 2, 2015. *See* [#7 at 4]. Plaintiffs then filed an Amended Complaint on July 6, 2015. [#8]. When Mr. Garcia answered the Amended Complaint, he did not include his counterclaim for abuse of process. *See generally* [#11].

The following facts found in Plaintiffs' Amended Complaint are taken as true for the purpose of consideration of the merits of Defendant's Motion to Dismiss or for Judgment on the Pleadings. The Amended Complaint states that Plaintiffs are Colorado corporations and Defendant is a citizen of Idaho. [#8 at ¶¶ 2-3]. Plaintiffs invoke diversity jurisdiction on the basis of diversity of citizenship of the parties and an amount in controversy exceeding $75,000. [#8 at ¶¶ 3-5].

The Amended Complaint states that National Credit Care, Continental Credit, and a third company, Home Loans Assist Corporation ("Home Loans Assist"), are related companies that share the same owners, officers, management, office location, and employees. [#8 at ¶ 6]. The three companies are described as being divisions within the same umbrella company, referred to

as "National Credit Care." [#8 at ¶ 7]. All three businesses provide credit repair services for their clients. [#8 at ¶ 16]. According to Plaintiffs, these companies are treated by both employees and management as divisions within the same company, National Credit Care. [#8 at ¶ 7]. Nonetheless, these three companies operate separately so that they can take advantage of different marketing and pricing opportunities. [#8 at ¶ 7].

Plaintiffs allege that when any one of the three companies hires a new employee, that employee is asked to sign a non-compete agreement with National Credit Care before he or she begins training. [#8 at ¶¶ 9, 14]. They also are asked to review and sign a "Receipt and Acknowledgement of National Credit Care Employee Handbook." [#8 at ¶ 14]. When Mr. Garcia began work, he signed the non-compete document, entitled "Confidentiality Agreement and Covenant Not to Compete" (the "Confidentiality Agreement") [#8 at ¶ 9]. Mr. Garcia signed the Employee Handbook on October 14, 2013 (his first day of training). [#8-2]. Plaintiffs allege that the Employee Handbook makes it clear in numerous locations that it applies to all three divisions. [#8 at ¶ 15].

After an employee is trained by National Credit Care, he or she is randomly assigned to work for National Credit Care, Continental Credit, or Home Loans Assist. [#8 at ¶ 11]. Sometimes employees transfer between National Credit Care, Continental Credit, or Home Loans Assist during their employment. [#8 at ¶ 12]. When an employee transfers between divisions, the employee is not considered a "new" employee and does not receive a new start date within the new division. [#8 at ¶ 12]. From the end of his training until he resigned on December 15, 2014, Defendant was a "Regional Sales Manager" for Continental Credit. [#8 at ¶¶ 17, 20].

After Mr. Garcia left Continental Credit, Mr. Garcia began operating a business under the name "Sprint Credit Restoration" and advertising that company through his website, www.sprintrestoration.com. Plaintiffs allege that this business competes against National Credit Care, Continental Credit, and Home Loans Assist and that Mr. Garcia began working there within the one-year non-competition period required by the covenant not to compete in the Confidentiality Agreement. [#8 at ¶ 22]. Plaintiffs further allege that Mr. Garcia has approached a substantial number of referral sources (primarily mortgage brokers) and persuaded them to give business to him. [#8 at ¶ 26]. Plaintiffs state that a number of referral sources have contacted them regarding Mr. Garcia's activities. [#8 at ¶ 27].

On June 23, 2015, Plaintiffs filed a motion to dismiss Mr. Garcia's abuse of process counterclaim ("Plaintiffs' Motion to Dismiss"). [#10]. Plaintiffs characterize Mr. Garcia's abuse of process counterclaim as including within it two additional counterclaims for intentional infliction of emotional distress and negligent infliction of emotional distress. [#10 at 3]. Plaintiffs argue that all three of these counterclaims should be dismissed for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

On October 19, 2015, Defendant filed a motion to dismiss or for judgment on the pleadings ("Defendant's Motion for Judgment on the Pleadings"). [#35]. Defendant argues that Plaintiffs' claims should all be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c) because the admissions and allegations in Plaintiffs' pleadings show beyond doubt that Plaintiffs can prove no set of facts upon which they can be granted their requested relief.

On November 9, 2015, Plaintiffs filed a response in opposition to Defendant's Motion to Dismiss or for Judgment on the Pleadings. [#37]. In support of their opposition brief, Plaintiffs

submit an affidavit from Kyle Kolb, the President and a shareholder of Plaintiff National Credit Care. [#37-1]. Defendant filed his reply in support of his Motion to Dismiss on December 3, 2015. [#38]. In addition to rebutting Plaintiffs' arguments, he also filed on the same day a motion to strike the Kyle Kolb affidavit. [#39].

## ANALYSIS

### I.   Motion to Dismiss Counterclaim

Plaintiffs filed a motion to dismiss Mr. Garcia's counterclaim for abuse of process, which they argue also includes within it counterclaims for intentional infliction of emotional distress and negligent infliction of emotional distress. That counterclaim appears in Mr. Garcia's Answer to the original complaint. *See* [#7]. However, when Mr. Garcia answered what is now the operative Complaint in this case, the July 6, 2015 Amended Complaint, he did not include that counterclaim. *See generally* [#11]. When Plaintiffs filed the Amended Complaint, that Amended Complaint became Plaintiffs' operative pleading in this case. Defendant's previous answer became moot and was superseded by the answer he filed to the Amended Complaint. *See Franklin v. Kansas Dep't. of Corrs.*, 160 F. App'x 730, 734 (10th Cir. 2005) ("An amended complaint supersedes the original complaint and renders the original complaint of no legal effect.") (citing *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)). Mr. Garcia's answer to the Amended Complaint is the operative answer in this action, and does not include the abuse of process counterclaim. Accordingly, the court denies Plaintiffs' Motion to Dismiss as moot. *See Malibu Media, LLC v. Fantalis*, No. 12-CV-00886-MEH, 2012 WL 5187840, at *5 (D. Colo. Oct. 18, 2012) ("With the filing of [an amended answer and counterclaims], Plaintiff's pending Motion to Dismiss Defendant/Counter Claimant's Amended Counterclaim is denied as moot.")

(citing *Franklin*, 160 F. App'x at 734); *Am. Family Mut. Ins. Co. v. Gustafson*, No. 08-CV-02772-MSK, 2011 WL 782574, at *10 (D. Colo. Feb. 25, 2011) (denying a motion for summary judgment on counterclaims where those counterclaims were not included when the defendant answered an amended complaint); *see also Righthaven, LLC v. Eiser*, No. 2:10-CV-3075-RMG, 2012 WL 527569, at *1 (D.S.C. Feb. 16, 2012).

## II.     Defendant's Motion to Dismiss or for Judgment on the Pleadings

### A.     Legal Standard

Defendant's Motion to Dismiss purports to be a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and/or a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c). *See* [#35 at 1]. Because Defendant answered the Amended Complaint on July 24, 2015, almost three months prior to filing his Motion, it is appropriate to consider the Motion as a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). *See Davis v. City of Aurora ex rel. City Council*, No. 08-CV-002107-PAB-MJW, 2011 WL 2799539, at *2 (D. Colo. July 14, 2011); *Lowe v. Town of Fairland, Okla.*, 143 F.3d 1378, 1381 n.5 (10th Cir. 1998) (because defendants filed their Rule 12(b)(6) motion after they filed their answer, their motion could be treated as one for judgment on the pleadings). A motion for judgment on the pleadings pursuant to Rule 12(c) is governed by the same standard of review applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Nelson v. State Farm Mut. Auto Ins. Co.*, 419 F.3d 1117, 1119 (10th Cir. 2005); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir. 2002)).

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In deciding such a motion, the court must "'accept as true all well pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff.'" *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). In addition, the court may take judicial notice of its own files and records, as well as facts which are a matter of public record. *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). In the context of a motion to dismiss, a court may consider facts subject to judicial notice without converting a Rule 12(b)(6) motion into one for summary judgment. *Id.* However, when a court takes judicial notice of documents, those documents may only be considered to show their contents, not for the truth of the matter asserted therein. *Id.*

A plaintiff may not rely on mere labels or conclusions in his pleadings, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As the Tenth Circuit explained in *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007), "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." The plaintiff must frame a complaint with enough factual matter, when taken as true, to suggest that he or she is entitled to relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

B.      Analysis

Defendant argues that in order to obtain relief on their claims, Plaintiffs must either: (1) allege facts showing that Mr. Garcia entered into a covenant not to compete with National Credit Care and that within one year from his termination from National Credit Care he began competing with National Credit Care; or (2) show that Plaintiff entered into a covenant not to compete with Continental Credit and within one year from his termination, he began competing with Continental. [#36 at 3-4]. According to Defendant, Plaintiffs' pleadings do not establish either of these two things. [#36 at 4]. The court will address Plaintiffs' two claims for relief in turn.

1.      Breach of Contract

a.      Parties to the Contract

Plaintiffs' first claim for relief is for breach of contract, arising from the alleged violation of the covenant not to compete. *See* [#8 at ¶¶ 28-35]. To establish breach of contract under Colorado law, a plaintiff must prove the following elements: (1) the existence of a contract; (2) plaintiff's performance or some justification for nonperformance; (3) defendant's failure to perform; and (4) resulting damages to the plaintiff. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). Contract interpretation is a question of law. *Ad Two, Inc. v. City & Cty. of Denver ex rel. Manager of Aviation*, 9 P.3d 373, 376 (Colo. 2000) (en banc). "The primary goal of contract interpretation is to determine and give effect to the intent of the parties." *Id.* (citing *USI Props. E., Inc. v. Simpson*, 938 P.2d 168, 173 (Colo. 1997)). The Colorado Supreme Court explained the following regarding interpretation of a contract under Colorado law:

> [C]ontract interpretation is a question of law that is reviewed de novo and we need not defer to a lower tribunal's interpretation of the contract. *See Fibreglas*

> *Fabricators, Inc. v. Kylberg*, 799 P.2d 371, 374 (Colo. 1990). Our review is guided by well-established principles of contract law. The primary goal of contract interpretation is to determine and give effect to the intent of the parties. *See USI Properties East, Inc. v. Simpson*, 938 P.2d 168, 173 (Colo. 1997). The intent of the parties to a contract is to be determined primarily from the language of the instrument itself. *See id.* In ascertaining whether certain provisions of an agreement are ambiguous, the instrument's language must be examined and construed in harmony with the plain and generally accepted meaning of the words employed. *See id.* Written contracts that are complete and free from ambiguity will be found to express the intention of the parties and will be enforced according to their plain language. *See id.* Extraneous evidence is only admissible to prove intent where there is an ambiguity in the terms of the contract. *See id.*
>
> Terms used in a contract are ambiguous when they are susceptible to more than one reasonable interpretation. *See Browder v. U.S. Fidelity & Guaranty Co.*, 893 P.2d 132, 133 (Colo. 1995). Absent such ambiguity, we will not look beyond the four corners of the agreement to determine the meaning intended by the parties. *See Simpson*, 938 P.2d at 173. The mere fact that the parties may have different opinions regarding the interpretation of the contract does not itself create an ambiguity in the contract. *See id*.

*Ad Two*, 9 P.3d at 376-77.

Mr. Garcia argues that he never entered into a covenant not to compete with Continental Credit, and that the 1-year clock on the covenant not to compete in the Confidentiality Agreement with National Credit Care began to run as soon as he began working for Continental Credit on October 14, 2013. Therefore, under Mr. Garcia's theory, Plaintiffs fail to state a claim because the activities they allege breach the Confidentiality Agreement did not take place until at least November 2014. *See* [#8 at ¶¶ 22-27]. Plaintiffs respond that there is ambiguity in the Confidentiality Agreement about who the parties to the agreement are because "National Credit Care" is a term that is used to refer to National Credit Care Corporation, Continental Credit Corporation, and Home Loans Assist Corporation. [#37 at 10 n.2].

The court finds no ambiguity regarding who the contracting parties are in the Confidentiality Agreement. The Confidentiality Agreement expressly states that it is between

9

"National Credit Care, a Colorado Corporation" and "Paul Garcia ('the Employee')." The Confidentiality Agreement is completely devoid of any mention of Continental Credit or any other affiliated corporation or subsidiary of National Credit Care. The specific reference in the Confidentiality Agreement to "National Credit Care, a Colorado Corporation," *see* [#8-1 at 1], also shows that the agreement pertains to the National Credit Care Corporation and is not used as a blanket term to refer to the three separate corporations. Indeed, the court takes judicial notice of other cases involving non-compete agreements enforced by Continental Credit filed in this District reflect that employees of Continental Credit signed very similar confidentiality agreements with Continental Credit, not National Credit Care. *See, e.g., Continental Credit Corp. v. Dragovich*, No. 13-cv-01349-WYD-MJW, Dkt. 1-1 (Confidentiality Agreement between Continental Credit and employee Jeffrey Dragovich); *Continental Credit Corp. v. Maloney*, No. 15-cv-00972-MSK-MJW, Dkt. 1-1 (Confidentiality Agreement between Continental Credit and employee Daniel Maloney). Had Continental Credit wished to bind Mr. Garcia with a non-compete agreement, it knew how to do so, and had the specific means to do so.

"It is axiomatic that in construing a document courts should not rewrite the provisions of an unambiguous document, but must enforce an unambiguous contract in accordance with the plain and ordinary meaning of its terms." *USI Props.*, 938 P.2d at 173 (citing *Wota v. Blue Cross & Blue Shield of Colo.*, 831 P.2d 1307, 1309 (Colo. 1992); *Griffin v. United Bank of Denver*, 599 P.2d 866, 868 (1979). This is particularly true when enforcing covenants not to compete, which are disfavored under Colorado law. *See* Colo. Rev. Stat. § 8-2-113. Because the Confidentiality Agreement is "complete and free from ambiguity," the court finds that it

"express[es] the intention of the parties and will be enforced according to [its] plain language." *USI Props.*, 938 P.2d at 173 (citing *Union Rural Elec. Ass'n. v. PUC*, 661 P.2d 247, 251 (Colo. 1983). Accordingly, the court will not consider the extraneous evidence Plaintiffs provide in the affidavit of National Credit Care's President, Kyle Kolb, regarding National Credit Care's intent regarding the language of the contract. *See USI Props.*, 938 P.2d at 173 ("Extraneous evidence is only admissible to prove intent where there is an ambiguity in the terms of the contract.") (citing *Radiology Prof'l Corp. v. Trinidad Area Health Ass'n, Inc.*, 577 P.2d 748, 750 (1978)). The court finds on the basis of the foregoing that the clear and unambiguous interpretation of the contract is that it is between National Credit Care Corporation, specifically, and Mr. Garcia.

### b.     Termination from Employment

Having found that the clear language of the Confidentiality Agreement establishes that it is an agreement between National Credit Care and Mr. Garcia, the court turns next to the issue of interpretation of the term "termination from employment" within the contract. Defendant argues that Plaintiffs cannot prevail on their claims against him because the facts pled by Plaintiffs do not show that he competed with National Credit Care within one year of his termination from employment with National Credit Care. [#36 at 4]. According to Defendant, he signed the Confidentiality Agreement with National Credit Care on October 14, 2013, and then was transferred to Continental Credit, a separate corporate entity, that same day. [#36 at 4]. Defendant argues that because National Credit Care and Continental Credit are two separate corporate entities, the transfer was a termination from National Credit Care that started the clock on the non-compete provision of the Confidentiality Agreement with National Credit Care.

11

Under Defendant's theory, the non-compete provision would have expired on October 14, 2014, two months before he stopped working for Continental. [#36 at 4-5].

The relevant portion of the Confidentiality Agreement that is in dispute provides as follows:

> 3. Employee further agrees that, while employed by National Credit Care and for a period of one year following the termination of employment with National Credit Care, Employee shall not, either directly or indirectly for himself or herself or through, on behalf of or in conjunction with any other person or entity:
>
> a. divert or attempt to divert any business or customer of National Credit Care to any competitor by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to National Credit Care or the goodwill associated with National Credit Care;
> b. . . .
> c. . . .
> d. own, manage, operate, join, control, be employed by, or participate in the ownership, management, operation, or control of or be connected in any manner, including but not limited to the positions of shareholder, director, officer, consultant, independent contractor, employee, partner, or investor, with any business which provides credit repair services within the Geographic Scope of the United States.

[#8-1 at 2].

Mr. Garcia argues that when he was assigned to work for Continental Credit on the same day he signed the Confidentiality Agreement, October 14, 2013, that constituted "termination of employment with National Credit Care" under the Confidentiality Agreement which would start the 1-year clock. Plaintiffs dispute this point, arguing that Mr. Garcia's theory would lead to the absurd result that he was terminated on his first day of employment. Plaintiffs further argue that Mr. Garcia's assignment to Continental, as a subsidiary of National Credit Care, was a "transfer," not a "termination." [#37 at 7]. This court is not persuaded by Plaintiffs' arguments,

particularly because accepting them would essentially permit them to reform an unambiguous contract to suit their means in this case.

As the Tenth Circuit has explained, a "parent company has a separate corporate existence and is treated separately from the subsidiary in the absence of circumstances justifying disregard of the corporate entity." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1081 (10th Cir. 2004) (quoting *Quarles v. Fuqua Indus.*, 504 F.2d 1358, 1362 (10th Cir. 1974)). Plaintiffs acknowledge in the Amended Complaint that they maintain themselves as separate businesses and separate corporate entities to take advantage of distinct benefits, including "tak[ing] advantage of slightly different marketing and pricing opportunities." [#8 at ¶ 8]. The court also takes judicial notice of Continental Credit and National Credit Care's registrations with the Colorado Secretary of State as separate and distinct corporations. *See* Fed. R. Evid. 201(b)(2) (A court may take judicial notice of a fact "that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned."); *Smith v. Krieger*, 643 F. Supp. 2d 1274, 1286 (D. Colo. 2009) ("Facts subject to judicial notice may be considered in a motion to dismiss without converting the motion to dismiss into a motion for summary judgment.") (citing *Hogan*, 453 F.3d at 1264 n.24). Plaintiffs cannot hold themselves out to the public and be organized as separate and distinct entities when it benefits them to do so and then turn around and seek to not be recognized as those same separate corporate entities when that is more to their benefit. *See Gaber v. Franchise Servs., Inc.*, 680 P.2d 1345, 1346-47 (Colo. App. 1984) ("[B]ecause the two subsidiaries are corporations with legally recognized identities separate and apart from the other which enjoy and benefit from such corporate separateness, they must here also bear the responsibility and liability

of such separateness.") (citing *Peterson v. Trailways, Inc.*, 555 F. Supp. 827 (D. Colo. 1983); *Lyon v. Barrett*, 445 A.2d 1153 (1982); *Boggs v. Blue Diamond Coal Co.*, 590 F.2d 655 (6th Cir. 1979), *cert. den.* 444 U.S. 836 (1979)).

The court also finds the Southern District of Indiana decision in *CDW LLC v. NETech Corp.*, No. 10-cv-00530-SEB-DML, 2012 WL 527449 (S.D. Ind. Feb. 16, 2012), persuasive. In *CDW*, the court applied Wisconsin law to address the issue of whether transfer from one subsidiary corporation to another subsidiary corporation constituted a "termination" of employment with the first subsidiary. The court determined that such a transfer constituted the end of employment with the first company, regardless of whether the employee would continue to perform identical duties, under identical circumstances, in the same place. *See id.* at *7-8. The court cited the Wisconsin Supreme Court's decision in *Krier v. Vilione*, 766 N.W.2d 517 (Wisc. 2009), for the proposition that when businesses make a conscious decision to create separate corporations with different types of corporate entities to carry out their operations, they likely enjoy certain advantages from doing business this way, but "also are bound by the disadvantages of forming separate corporations." *Id.* at 525. In *Krier*, the court went on to explain that "[o]ne cannot maintain the corporate structure when it inures to one's benefit and then ignore the constraints of corporate law when it does not. These parties formed separate entities that remain separate entities." *Id*. The same reasoning, which is consistent with Colorado law, applies to the case at hand.

The court finds the cases cited by Plaintiffs on the issue of termination of employment distinguishable. In *Williams v. Powell Elec. Mfg. Co.*, the Texas Court of Civil Appeals addressed whether portions of a covenant not to compete with a parent company could be

enforced by a subsidiary. 508 S.W.2d 665 (1974). There, the covenant itself specifically stated it was assignable, but the court determined that no express assignment would be required between the parent and the subsidiary because that requirement would be merely formalistic. *Id.* at 667. In contrast, the current case does not involve a covenant not to compete that states by its terms that it is assignable, nor does the issue here center on whether National Credit Care had the ability to transfer the Confidentiality Agreement to Continental Credit. Instead, the issue centers on whether Mr. Garcia's placement as an employee of Continental Credit constituted a "termination" of his employment under the Confidentiality Agreement with National Credit Care.

The *Guidant* case is also distinguishable. In *Guidant Sales Corp. v. George*, the District of Minnesota found that a subsidiary entity that was created by a parent entity after an employee had signed a Non-Compete Agreement with the parent entity could enforce a covenant not to compete against the employee. *Guidant*, 2001 WL 1491317, at *6. However, importantly, the *Guidant* case involved both the creation of a new entity during the pendency of the employee's employment and a provision in the agreement at issue which specifically included the parent and "all of its parent, subsidiary or affiliated corporations and the operating divisions thereof." *Id.* at *6. The court does not find it appropriate to extend this reasoning to the current circumstances, where both National Credit Care and Continental Credit were in existence prior to Mr. Garcia being hired, the Confidentiality Agreement does not define National Credit Care as including Continental Credit as a subsidiary, and there is no allegation anywhere in the Amended Complaint that the Confidentiality Agreement was assigned or transferred from National Credit Care to Continental Credit. Instead, Plaintiffs appear to be proceeding in the Amended

15

Complaint on the theory that the Confidentiality Agreement, by its very terms, encompasses Continental Credit (a theory which the court has already rejected).

The Amended Complaint clearly states that "[f]rom the end of training to December 15, 2014, Defendant was a 'Regional Sales Manager' for the Continental Credit division of National Credit Care." [#8-1 at ¶ 17]. Nowhere does the Amended Complaint state that Mr. Garcia was also an employee of National Credit Care at that time, nor can artful pleading avoid the fact that National Credit Care and Continental Credit are, in fact, two separate corporate entities. [#8 at ¶¶ 1 ("Plaintiffs are Colorado corporations"), 6 ("NCC, CC, and their sister company Home Loans Assist Corporation are relatively small companies")]. Indeed, had Continental Credit simply been a subsumed "division" of National Credit Care as opposed to a separate corporate entity, then it is unclear whether it could proceed as a separate party to this lawsuit, either in the original or Amended Complaint.

The court finds the term "termination from employment" to be unambiguous as it appears within the four corners of the Confidentiality Agreement. There is no basis for turning to extrinsic evidence such as the employee handbook to examine what Plaintiffs now argue National Credit Care's intention was at the time. The Confidentiality Agreement makes it clear that the 1-year clock on the covenant not to compete began to run at the point at which Mr. Garcia was no longer employed by National Credit Care Corporation (despite Plaintiffs' apparent confusion on this point, the Confidentiality Agreement clearly states that the contracting party is "National Credit Care, a Colorado Corporation." *See* [#8-1 at 1]). Accordingly, Plaintiffs' Amended Complaint, even when construed in a light most favorable to Plaintiffs, does not establish that Mr. Garcia's employment with National Credit Care (if he ever was employed by

16

that entity) was terminated less than a year before the activities that Plaintiffs allege violated the non-compete clause took place in November and December 2014.

On the basis of the foregoing, the court finds that National Credit Care and Continental Credit have failed to state a claim for which relief can be granted their first claim for breach of the Confidentiality Agreement, and Plaintiffs' first claim for relief (Breach of Contract: Noncompete Covenant) is **DISMISSED with prejudice**.[1]

### 2. Unjust Enrichment

Though both Parties treat the pending Motion for Judgment on the Pleadings as fully dispositive of this action, neither Party specifically addresses Plaintiffs' second claim for relief for unjust enrichment. This court declines to extend its analysis beyond the arguments set forth by the Parties. *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself"); *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (observing that the court has no obligation to make arguments or perform research on behalf of litigants). However, this court has an independent obligation to inquire about its subject matter jurisdiction *sua sponte*, at any stage of the litigation. *1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006).

Plaintiffs invoked this court's subject matter jurisdiction based on diversity. *See* [#8 at ¶ 4]. While Plaintiff states that the current good faith estimate of damages meets or exceeds

---

[1] The court does not reach the issue of whether the covenant not to compete as applied to Mr. Garcia is void under Colorado law, but notes that the Honorable Wiley Y. Daniel found a similar, if not identical, agreement between Continental Credit and a former employee contained a non-compete covenant that would be void under Colorado law. *See Continental Credit Corp. v. Dragovich*, No. 13-cv-01349-WYD-MJW, Dkt. 32, at 8 (July 1, 2013).

$200,000 [#27 at 11] and the Parties agreed that the amount in controversy exceeds $ 75,000 [*id.* at 8], it is entirely unclear from either the operative Amended Complaint or the Computation of Damages section in the Scheduling Order what the theory for liability or basis for damages is for Plaintiffs' unjust enrichment claim. Therefore, **IT IS ORDERED** that on or before March 8, 2016, Plaintiffs must **SHOW CAUSE** in writing why this case should not be dismissed for lack of subject matter jurisdiction, clearly articulating their theory of liability and basis for damages for the remaining unjust enrichment claim.

### C. Defendant's Request for Fees

Defendant requests recovery of his attorney fees and costs to defend this action pursuant to Colo. Rev. Stat. §13-7-102. [#36 at 12]. Under Colo. Rev. Stat. § 13-7-102, a court may award reasonable attorney fees against any attorney or party who has brought or defended a civil action, either in whole or in part, that the court determines lacked substantial justification. Defendant has not established his entitlement to such fees, and accordingly the court denies this request.

### III. Motion to Strike Portions of the Kyle Kolb Affidavit

The court next considers Defendant's Motion to Strike Portions of the Kyle Kolb Affidavit. [#39]. Defendant seeks to strike paragraphs 4-8 of the affidavit of Kyle Kolb which was filed in support of Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss. Because the court has not relied on the disputed contents of Mr. Kolb's affidavit in reaching its judgment on Defendant's Motion to Dismiss, it denies Defendant's Motion to Strike Portions of the Kyle Kolb Affidavit as moot. *See Warnick v. Dish Network LLC*, 301 F.R.D. 551, 561 (D. Colo. 2014) (denying as moot a motion to strike affidavits and testimony offered in support of a

motion for class certification where the motion for class certification was denied); *Indep. Inst. v. Gessler*, 869 F. Supp. 2d 1289, 1314 (D. Colo. 2012) (denying motion to strike portions of affidavits as moot where the court "did not rely upon any of the challenged portions of the declarations in resolving the motion for summary judgment"); *Rich Floors, LLC v. Jaylon, Inc.*, No. 08-CV-02291-LTB-BNB, 2010 WL 1332944, at *10-11 (D. Colo. Apr. 5, 2010) (denying motion to strike where evidence at issue was not considered in ruling on motion for summary judgment); *Schimmer v. State Farm Mut. Auto. Ins. Co.*, No. 05-cv-02513-MSK, 2006 WL 3097768, at *1 (D. Colo. Oct. 31, 2006) (declining to strike affidavit where court did not consider it in ruling on summary judgment).

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that:

(1) Plaintiffs' Motion to Dismiss Counterclaims [#10] is **DENIED** as **MOOT**;

(2) Defendant's Motion to Dismiss (Rule 12(b)(6)) or for Judgment on the Pleadings (Rule 12(c)) [#35] is **GRANTED IN PART** and **DENIED IN PART**;

(3) Plaintiffs' first claim for relief for breach of contract is **DISMISSED WITH PREJUDICE,**

(4) Plaintiffs must **SHOW CAUSE** on or before **March 8, 2016** as to why the remaining claim for unjust enrichment should not be dismissed for lack of subject matter jurisdiction; and

(5) Defendant's Motion to Strike Portions of the Kyle Kolb Affidavit [#39] is **DENIED** as **MOOT**.

DATED: February 16, 2016 BY THE COURT:

s/Nina Y. Wang_____
United States Magistrate Judge